IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **Darrell L. Goss, Sr.,** ) | Civil Case No. 2:20-cv-02978-JFA-MGB |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| **James W. Larry, Troy O. Rock, Carmen** ) | |
| **Carpenter, Tanesha Edwards,** ) | |
| **Williemary Scott, Marcus Russell,** ) | |
| **Johnny Rich, Nathan G. Saverence,** ) | |
| **Katherine L. Kennedy, South Carolina** ) | |
| **Department of Corrections,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

This action has been filed by Plaintiff, *pro se* and *in forma pauperis*, pursuant to 42 U.S.C. § 1983, alleging constitutional claims of excessive force and deliberate indifference, and a state law claim for negligence. This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. No. 79.) Under 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), the undersigned is authorized to review the Motion and submit a recommendation to the District Judge. For the reasons set forth below, the undersigned recommends Defendants' Motion for Summary Judgment (Dkt. No. 79) be granted.

## BACKGROUND

This civil action arises from the spraying of chemical munitions on Plaintiff while he was housed at Turbeville Correctional Institution ("Turbeville"), and the events that transpired thereafter. Specifically, in his Amended Complaint, Plaintiff alleges that on January 16, 2018,

1

"Defendants Lieutenant James W. Larry,[1] Sargent Troy O. Rock, Sargent Carmen Carpenter, and Officer Tanesha Edwards" used "excessive force when they sprayed him with an excessive amount of chemical munitions." (Dkt. No. 19 at 6.) Plaintiff further alleges that "Defendants Lieutenant Williemary Scott, Lieutenant Marcus Russell, Officer Johnny Rich, Registered Nurse Nathan G. Saverence, and Registered Nurse Katherine L. Kennedy" were deliberately indifferent to Plaintiff's serious medical needs "when they refuse[d] to allow Plaintiff Goss to decontaminate himself by taking a shower, after he was sprayed with an excessive amount of chemical munitions." (*Id.* at 6–7.) Finally, Plaintiff alleges that Defendant South Carolina Department of Corrections ("SCDC") was negligent and grossly negligent "when its employees . . . used excessive force against Plaintiff Goss by spraying him with an excessive amount of chemical munitions and then afterward, refuse[d] to allow him to take a shower in order to decontaminate himself of chemical munitions." (*Id*. at 7.) Plaintiff alleges he has suffered "great physical, mental, and emotional pain" as a result of Defendants' actions. (*Id.*)

On August 19, 2021, Defendants filed a Motion for Summary Judgment. (Dkt. No. 79.) Plaintiff filed a response in opposition on September 23, 2021 (Dkt. No. 82), to which Defendants filed a reply on September 30, 2021 (Dkt. No. 83). On October 6, 2021, Plaintiff filed a sur-reply. (Dkt. No. 84.) Defendants' motion has been fully briefed and is ripe for review.

## **LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence

---

[1] Defendant Larry was dismissed as a party to this action on June 22, 2021, after it was shown that he is deceased. (Dkt. No. 70.)

would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Pub'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a court considers the motion, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## **DISCUSSION**

Defendants contend that Plaintiff's claims should be dismissed because (1) Plaintiff cannot establish a violation of his constitutional rights under § 1983; and (2) any state law claims are barred by the applicable statute of limitations under the South Carolina Tort Claims Act ("SCTCA"). (Dkt. No. 79-1.) Defendants also ask that the Court designate this action as a "strike" pursuant to 28 U.S.C. § 1915(g). (*Id.* at 14–15.)

Plaintiff's response brief clarifies a few matters at the outset. First, Plaintiff states that he "does not dispute[] the Defendants' argument that [Defendant] officers were justified in using chemical munitions on him. Rather, Goss' argument is centered around what happened 'after' those officers sprayed him with so much mace." (Dkt. No. 82 at 2.) Plaintiff asserts that "because the Defendant officers refused to allow him to take a shower in order to remove the mace from his body, their action constitutes excessive force and a denial of medical care." (*Id.*) In other words, Plaintiff makes clear that his claims in this action center on his alleged inability to clean the mace off himself after chemical munitions were deployed.

Given Plaintiff's apparent concession as to Defendants' constitutional use of force in spraying Plaintiff with mace, the undersigned recommends summary judgment be granted as to any § 1983 excessive force claims arising from these allegations. The undersigned further recommends summary judgment be granted as to any state law claims against SCDC arising from these allegations. In sum, Plaintiff's § 1983 claims asserting excessive force based on the use of chemical munitions should be dismissed, as well as any state law claims against SCDC based on this alleged conduct.

Second, Plaintiff's response brief does not acknowledge Defendants' argument that Plaintiff's state law claims are barred by the applicable statute of limitations under the SCTCA. Plaintiff does not mention his state law claims against SCDC in his response brief. The SCTCA provides a two-year statute of limitations for personal-injury torts alleged against employees of state agencies or governmental entities. S.C. Code Ann § 15–78–110. Pursuant to section 15–78–20(b) of the South Carolina Code, "[t]he remedy provided by this chapter is the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents . . . ." This action arises from events that occurred on January 16, 2018, and Plaintiff filed this action on August 18, 2020. (Dkt. No. 1.) Given Plaintiff's apparent concession that his claims are barred by the applicable two-year statute of limitations under the SCTCA, the undersigned recommends Plaintiff's state law claims against SCDC be dismissed in their entirety.

Having addressed these initial matters, the undersigned turns to the merits of Plaintiff's § 1983 claims arising from Plaintiff's allegations that he was not allowed an opportunity to decontaminate after being sprayed with chemical munitions.

### A. Relevant Legal Standards

#### 1. Personal Participation

Plaintiff's Amended Complaint indicates Defendants are sued in their individual capacities only. (Dkt. No. 19 at 2–4.) "The law is clear that personal participation of a defendant is a necessary element of a Section 1983 claim against government officials in their individual capacities." *Blessing v. Scaturo*, No. 6:16-cv-1832-BHH-KFM, 2017 WL 3575734, at *9 (D.S.C. July 28, 2017) (citing *Trulock v. Free*, 275 F.3d 391, 402 (4th Cir. 2001)), *adopted by*, 2017 WL 3535104 (D.S.C. Aug. 17, 2017). "In order for an individual to be liable under Section 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights, [and the defendant] must have had personal knowledge of and involvement in the alleged deprivation of [the plaintiff's] rights . . . .'" *Id.* (quoting *Harbeck v. Smith*, 814 F. Supp. 2d 608, 627 (E.D. Va. 2011)).

#### 2. § 1983 Eighth Amendment Claims and Qualified Immunity

Plaintiff brings his remaining § 1983 claims as both an excessive force claim and a deliberate indifference claim. An inmate may maintain an Eighth Amendment claim of excessive force where he is subjected to chemical munitions and not allowed to wash or decontaminate himself. *See Mann v. Failey*, 578 Fed. App'x. 267, 273 (4th Cir. 2014) ("We have previously held that the denial of decontamination can give rise to an Eighth Amendment claim."); *Williams v. Benjamin*, 77 F.3d 756, 764–65 (4th Cir. 1996) (analyzing plaintiff's claim that he was restrained without the opportunity to wash after being maced as an excessive force claim). Alternatively, the Fourth Circuit has also analyzed such a claim as one asserting medical indifference. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (analyzing plaintiff's claim against corrections officers who allegedly failed to permit decontamination and provide medical treatment after he was pepper

5

sprayed as a deliberate indifference to medical needs claim). Defendants assert they are entitled to qualified immunity as to any alleged constitutional violations. (Dkt. No. 79-1 at 9–12.)

### a.  Qualified Immunity

"Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects officers from liability for "bad guesses in gray areas" and bases liability on the violation of bright-line rules. *Id.* (quoting *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011)). "Qualified immunity provides 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

In determining whether an officer is entitled to summary judgment on the basis of qualified immunity, the court applies "a familiar two-step inquiry." *Harris v. Pittman*, No. 17-7308, 2019 WL 2509240, at *10 (4th Cir. June 18, 2019) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). At step one, courts ask "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the police officer's actions violated a constitutional right." *Id.* (quoting *Meyers v. Balt. Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). "At step two, the question is whether the right at issue was 'clearly established' at the time of the officer's conduct." *Id.* (quoting *Meyers*, 713 F.3d at 731). District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236 (2009).

### b.     Excessive Force

The "unnecessary and wanton infliction of pain," constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components. *See Wilson v. Seiter*, 501 U.S. 294, 302 (1991). Specifically, when alleging an Eighth Amendment claim for excessive force, the court must determine whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component). *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). What must be established with regard to each component "varies according to the nature of the alleged constitutional violation." *Hudson*, 503 U.S. at 5.

To establish the subjective component of an excessive force claim, an inmate must show that the prison official acted "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). In making this determination, courts should consider: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them. *Id*. at 321. The objective component measures the force used against "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotations omitted). The objective component is not as demanding because "when prison officials maliciously and sadistically use force to cause harm, contemporary

standards of decency always are violated . . . ." *Id*. (internal quotation marks omitted); *see also Mann*, 578 F. App'x at 272 ("Notably, a lack of injury is not dispositive, so long as there is sufficient evidence of maliciously-applied force.").

### c.  Deliberate Indifference to Serious Medical Need

Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal citation omitted).

To bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848. 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837, (1994).

**B.     Evidence**

Having considered the applicable legal standards, the undersigned next considers the evidence most relevant to the merits of Plaintiff's § 1983 Eighth Amendment claims.

### 1.     Affidavit from Major Richard Chvala and Agent John Lighthill, III

Defendants have submitted affidavit testimony from Major Richard Chvala and Agent John Lighthill, III, that these individuals gave in another case involving Plaintiff, *Goss v Stirling et al*, Case No. 2:18-cv-00326-BHH-MGB.[2] In his affidavit, Major Chvala describes the incident at issue in this action as follows:

> I investigated the incident involving Inmate Goss on January 16, 2018 in which Inmate Goss and his cellmate charged out of their cell when the door was opened by an officer to distribute lunch meals. Inmate Goss and his cellmate, both carrying homemade knives or "shanks", chased after two inmates who were exiting the unit escorted by Counselor Troy Rock. Inmate Goss and his cellmate chased and stabbed the first inmate in the back several times, then took off after the second inmate chasing him around the unit. After refusing multiple commands to stop, Inmate Goss was subdued by chemical munitions dispersed by several officers. Two large homemade weapons were found on the ground by Inmate Goss. At this time, Inmate Goss was escorted to medical for a shower and then to lockup and transferred out of Turbeville Institution. Officer reports and the medical examination records document that Inmate Goss was the aggressor and received no injuries.

(Dkt. No. 79-2 at 3–4.)

In his affidavit, Agent Lighthill describes the aftermath of the incident at issue as follows:

> I was assigned . . . to investigate an inmate on inmate assault that took place January 16, 2018 at Turbeville Correctional Institution. Inmate Goss was the subject of that investigation and was not a victim of violence. . . . Inmate Goss was seen by medical on January 16, 2018, where he was decontaminated from the munitions spray and on January 19, 2018 after being transferred to Allendale Correctional. In both medical notes, there was no mention of Inmate Goss being stabbed or receiving any injury from the other inmates involved in the incident. . . . There is a medical note of January 22, 2018, in which he told medical staff at Allendale that "his lawyer told him to report that he had been stabbed while at Turbeville, so he stabbed him back and that he was peppered sprayed by the officers and was never seen by

---

[2] This Court may take judicial notice of "docket entries, pleadings and papers in other cases." *Brown v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x. 200 (4th Cir. 2016). Plaintiff does not challenge Defendants' reliance on these affidavits in this case.

medical for it and now because of that, he suffers from light-headedness, feeling dizzy, sore-throat breathing problems, stuffy nose and runny nose."

(Dkt. No. 79-3 at 1, 5–6.)

### 2.    Defendants' Discovery Responses

Plaintiff has submitted certain discovery responses by Defendants indicating that during the incident at issue, Defendant Tanesha Edwards sprayed 28 grams of chemical munitions on Plaintiff, Defendant Larry W. James sprayed 137 grams of chemical munitions on Plaintiff, and Defendant Troy O. Rock "administered one spray of chemical munitions when he was confronted by Plaintiff who was holding a knife. The exact amount of munitions used [by Rock] is unknown." (Dkt. No. 82-1 at 3.) Defendants also stated, "The undersigned is unaware of the person who 'gave Plaintiff a shower,' but the medical note from the date of the incidents [sic] says that Plaintiff had been able to wash his face." (*Id*. at 4.)

### 3.    Incident Reports

An Incident Report submitted by Defendant Marcus Russell on January 16, 2018 states,

> I, LT Marcus Russell was the camera operator for a post use of force assessment for offender Goss . . . . Ofc Johnny Rich was the escort officer for the post use of force. Lt. Williemary Scott was the narrator. Offender was seen by medical RN Saverance. Offender Goss Darrell receive[d] a shower.

(Dkt. No. 82-1 at 18.) An Incident Report submitted by Defendant Williemary Scott on January 16, 2018 gives the same substantive statement including that "Offender Goss Darrell receive[d] a shower." (*Id*. at 19.)

### 4.    Plaintiff's Medical Records

Defendant Registered Nurse Nathan Saverance signed the following medical records pertaining to Plaintiff on January 16, 2018:

10

> I/M seen in Murray Unit. I/MS involved in chemical immunition [sic] in Tawcaw Dorm. I/MS educated about decontamination, new clothes and new rooms were avail to this offender. . . .
> I/M seen for post use of force in Murray Unit with camera. I/M respirations are even and unlabored. I/M has rinsed face off already. I/M states still has burning in eyes and nose. Lung sounds are all clear SPO2 is 98%, heart rate is 105, IM in NAD. I/M instructed to take a full body shower. Turned over to security.

(Dkt. No. 82-1 at 10.)

Medical records dated January 22, 2018 record Plaintiff as stating, "My lawyer told me to report this, this happened at Turbeville. I was stabbed, so I stabbed him, they used pepper spray and I was not seen for either, I am out of high B/P med, from the pepper spray I now suffer light headedness, dizzy, sore throat, breathing problems, stuffy and runny nose." (Dkt. No. 79-4 at 5.) Records from this date document,

> Walking in restraints, with a steady gait, no difficulty taking or breathing noted, in restraints, inside low[er] R arm small abrasion about the size of a[n] end of pencil or small, no puncture wound noted, eyes not red or watering, no nasal drainage noted while in sick call room. Head did not appear congested, no sneezing or coughing noted.

(*Id*.)

Medical records dated January 25, 2018 states, *inter alia*, "States gassed . . . and was having throat pain and breathing problems. States wasn't allowed to take shower until transferred to ACI that night [undecipherable], breathing labored. Main issue is he wants his complaint documented for his lawyer." (Dkt. No. 82-1 at 13.)

### 5.    Affidavit from Defendant Nathan Saverance

Defendants have submitted an affidavit from Defendant Nurse Saverance who avers that on the date of the incident at issue,

> Inmate Goss was brought to the Murray Unit to be seen by medical following the use of chemical munitions on inmate Goss. I spoke with and educated inmate Goss about decontamination, and inmate Goss was allowed to rinse his face off. Additionally, inmate Goss was provided a new set of clothes. Approximately one

11

> hour later, I conducted a follow-up visit with inmate Goss to check on his condition. At that time, inmate Goss's respirations were even and unlabored, he had rinsed his face off, his lung sounds were clear, and he was in no acute distress. Inmate Goss did state that he still had burning in his eyes and nose. This is expected, and I instructed inmate Goss that the burning should subside and that he should take a full body shower. After my follow-up visit with inmate Goss and after noting no serious medical issues, inmate Goss was turned over to security.
>
> At no point did I note or see that inmate Goss was suffering from a serious medical condition. Inmate Goss had no trouble breathing and was not in distress—both issues that could indicate the need for additional medical treatment. Inmate Goss had a burning sensation in his eyes and nose, but those issues are common after the use of chemical munitions and do not indicate a serious medical need. The only medical issues/injury that inmate Goss told me he had was the after effects of chemical munition. Inmate Goss was not bleeding and had no other visible injuries. At no point did inmate Goss advise me that he had been stabbed.

(Dkt. No. 79-8 at 1–2.)

### 6. Plaintiff's Sworn Declaration

Plaintiff has submitted a Sworn Declaration pursuant to 28 U.S.C. § 1746, in which he avers, *inter alia*,

> After the officers had sprayed me with 137 plus grams of chemical munitions, I was taken and placed into a holding cell for eight (8) hours until I was transferred to Allendale Correctional Institution. Within the first 10 minutes of me being in the holding cell, the officers came and took away my clothes from me and allowed me to wash my face for a few minutes in a small sink. Afterwards, I was giv[en] a jumpsuit to put on and was taken to see medical. While in the medical unit, the officers were in the room with me and the nurse. I told the nurse that my eyes and nose were still burning, and he told me to take a full body shower. When the officers were escorting me back from medical, I thought that they were going to put me in the shower, but they didn't; instead, they put me back into the holding cell. That's when I asked about my shower, but they didn't say anything and walked away.
>
> During the 8 hours in the holding cell, my face, eyes, nose, arms, and chest area were burning. I was also having trouble breathing. I thought that I was about to die, so I laid on the floor naked (with only my boxer short underwear on) in order to allow the cold air from off the floor cool me down and make me feel better. I remember one officer came to the door and asked me if I was okay, but, at that time, I could not speak so I just stayed laying on the floor.
>
> Several hours later, the officers came to get me for transportation and I told them that I was having trouble with my breathing, so they took me to the medical unit.

12

> At medical, the nurse washed my face using milk and I felt better. Then the officers placed me in a van and transported me to Allendale prison. When I arrived at Allendale, I told the officers that I had been maced and hadn't taken a shower yet. I asked the officers could I take a shower before I get locked into my cell and they said no, that I can take a shower tomorrow. I did not receive a shower until 1:00 pm the next day. All throughout that same night, I didn't sleep because my body was burning.

(Dkt. No. 82-1 at 14–16.)

### C.    Analysis

As an initial matter, Plaintiff's response brief clarifies that Plaintiff's remaining § 1983 claims are brought against only Defendants Marcus Russell, Williemary Scott, and Johnny Rich, "the escorting officer[s] for post use of force for Goss." (Dkt. No. 82 at 9.) Plaintiff asserts that these Defendants "should have given him a shower to completely remove the mace from his face, eyes, nose, and body." (*Id*. at 6.) Plaintiff alleges that these Defendants' conduct demonstrates that they "deliberately inflicted unnecessary pain upon him by refusing to give him that shower" and that they were "deliberately indifferent to his serious medical need to be given a shower after being dosed with mace." (*Id*. at 4–5, 9.) Given Plaintiff's clarification here and that the undersigned has recommended all other claims in this action be dismissed, the undersigned recommends that Defendants Rock, Carpenter, Edwards, Saverance, Kennedy, and SCDC be dismissed from this action.

In their briefing, Defendants assert that Plaintiff "has not set forth sufficient evidence to prove a question of fact as to his Eighth Amendment claims against Defendants" because there is no dispute that "within 10 minutes" of the deployment of chemical munitions, Plaintiff was provided "access to water to wash his face and a fresh set of clothing"; he was "seen by a nurse not once, but twice in the first hour"; "[p]rior to Plaintiff being placed in a holding cell, he had chased after and stabbed another inmate with a knife"; and "[t]here was no shackling, no restraint,

13

and no further force used on Plaintiff." (Dkt. No. 83 at 4–5.) Defendants claim that Plaintiff's "argument that he was required to have a shower after chemical munitions were used was not and is not clearly established law."[3] (*Id*. at 5.)

In response, Plaintiff states that

> Even though the officers initially allowed Goss to wash his face in a sink and provided him a set of new clothing; after this, Nurse Saverance still deemed it necessary for him to take a full body shower in order to completely remove the mace from Goss's entire body, not just his face. As Goss stated in his declaration, his face, eyes, nose, arms, and chest were all burning; and he couldn't speak or breathe. . . . Defendants Lt. Russell, Lt. Scott, and Ofc. Rich were all aware of Nurse Saverance's instruction to Goss to take a shower because they were the officers who escorted him to the medical unit, they stayed in the medical room with him and Nurse Saverance, and they escorted him back from the medical unit. Furthermore, while the officers were putting Goss back into the holding cell, he asked them about his shower and they ignored him and walked away.

(Dkt. No. 82 at 8–9.)

Upon careful review and construing the evidence in the light most favorable to Plaintiff, the undersigned cannot find a genuine issue of material fact exists as to Plaintiff's § 1983 claims. It is undisputed that shortly after being sprayed with mace, Plaintiff was allowed "to wash [his] face for a few minutes in a small sink," given a new jumpsuit, and treated by medical. (Dkt. No. 82-1 at 14–15). Plaintiff asserts that in addition to these decontamination measures, a shower was necessary based on Nurse Saverance's instructions. Nurse Saverance avers that during his second visit with Plaintiff, after Plaintiff stated "he still had burning in his eyes and nose," he instructed Plaintiff "that the burning should subside and that he should take a full body shower." (Dkt. No. 79-8 at 1.) During that same visit, Nurse Saverance avers that Plaintiff's "respirations were even and unlabored, he had rinsed his face off, his lung sounds were clear, and he was in no acute

---

[3] Defendants appear to concede that Plaintiff did not receive a shower in this case. They do not acknowledge the incident reports from Defendants Russell and Scott indicating Plaintiff received a shower.(Dkt. No. 82-1 at 18–19.)

14

distress." (*Id.*) Plaintiff's sworn declaration confirms that he told Nurse Saverance his "eyes and nose were still burning." (Dkt. No. 82-1 at 15.)

In short, the record indicates that the facts as known to Defendants Russell, Scott, and Rich at the time they denied Plaintiff the opportunity to shower are as follows: (1) shortly after being sprayed with mace, Plaintiff rinsed his face "for a few minutes," changed clothes, and was treated by medical;[4] (2) Plaintiff was told by a medical professional that the burning in his eyes and nose should subside, and he was instructed to take a full body shower; and (3) right before returning to his holding cell, Plaintiff appeared to be in no acute distress. Plaintiff states in his sworn declaration that his "face, eyes, nose, arms, and chest area were burning" after he returned to his "holding cell." (Dkt. No. 82-1 at 15.) However, Plaintiff only indicated in the presence of Defendants Russell, Scott, and Rich that his eyes and nose were burning, and these Defendants heard Nurse Saverance tell Plaintiff that the burning should subside. Nurse Saverance did not make clear that a full body shower was required immediately to alleviate the burning in Plaintiff's eyes and nose or was otherwise medically necessary at that point.

Given the significant decontamination measures provided to Plaintiff shortly after he was sprayed with mace and the lack of any significant injury to Plaintiff as it was presented to Defendants Russell, Scott, and Rich, the undersigned cannot find Defendants Russell, Scott, and Rich violated Plaintiff's constitutional rights by denying him a shower. *See*, *e.g.*, *Mann v. Williams*, No. 0:14-CV-1647-RMG, 2015 WL 5165152, at *2 (D.S.C. Sept. 2, 2015) (finding no constitutional violation under Fourth Circuit precedent when inmate was seen by medical personnel soon after the use of chemical munitions and was allowed to flush his face with cold water for several minutes); *Wilson v. Broddy*, No. 9:14-CV-2531-BM, 2015 WL 11143429, at *7

---

[4] Plaintiff seen by medical twice within an hour. (Dkt. No. 79-8 at 1–2.)

(D.S.C. Mar. 30, 2015) (finding no violation of constitutional rights arising from decontamination claim where plaintiff concedes the nurse "gave him a verbal recommendation of what to do" and "he not only had a sink with running water in his cell that he could use to rinse off, but he actually did so," also "medical records provided to the Court . . . confirm that Plaintiff was seen by medical following this [making] incident, was told to rinse with cool water until any burning sensation subsided, and that he was in no obvious distress following this incident"), *aff'd*, 621 F. App'x 246 (4th Cir. 2015); *Brown v. Walker*, No. 9:09-CV-3064-RMG-BM, 2010 WL 4484185, at * 5 (D.S.C. Oct. 6, 2010) (finding no constitutional violation where inmate was provided running water to wash off chemical spray), *adopted by* 2010 WL 4482100 (D.S.C. Nov. 1, 2010); *see also Jackson v. Morgan*, 19 Fed. App'x. 97, 102 (4th Cir. 2001) (finding an inmate's decontamination was "adequate" where he was allowed to "flush[ ] his face and head with running water" and he "did not complain to the nurse or the officers"); *Al-Mujahidin v. Harouff*, No. 9:14-CV-1266-BHH, 2015 WL 5159065, at *6 (D.S.C. Sept. 2, 2015) ("Recognizing that chemical munitions are often used in volatile and dangerous situations involving high-risk inmates, the Court declines to dictate to prison officials the place or manner in which an inmate should be allowed to decontaminate. However, where a prisoner presents evidence that he was sprayed with chemical munitions and then restrained for an extended period of time without *any* opportunity to decontaminate, summary judgment is not appropriate." (emphasis in original)).

In support of his claims here, Plaintiff cites the Fourth Circuit cases *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996) and *Iko v. Shreve*, 535 F.3d 225, 232 (4th Cir. 2008). Neither of these cases compel denying summary judgment here. In *Williams*, the plaintiff inmate threw "foul" liquids on officers, and they responded by spraying a near-lethal dose of mace into the plaintiff's cell. 77 F.3d at 760, 764. Although the plaintiff then complied with the officers' orders, he was

16

placed in four-point restraints and chained to a bunk for eight hours. *Id*. at 764. Plaintiff was in "immense pain" because of the mace and pleaded for water to wash off the mace, but the officers did not permit him to decontaminate, and no medical personnel checked on his condition. *Id*. at 765. The Fourth Circuit denied summary judgment on the plaintiff's excessive force claim, finding that to do otherwise would create a "harmful precedent," because "whenever any inmate causes a disturbance by throwing water or something similar at a guard, and refuses to obey a further command, guards can—without fear of violating the Constitution—spray an inmate in the face with mace and then confine him in four-point restraints for an extended period of time without permitting him to wash . . . and without allowing him the benefit of medical attention of any kind." *Id.*

In *Iko*, the treatment of the inmate plaintiff was even more severe. Specifically, the plaintiff was repeatedly pepper sprayed, then shackled and placed a "spit mask" over his head, to prevent him from spitting on an officer. 535 F.3d at 232. The officers then brought plaintiff to a "medical room" to be examined by a nurse. *Id.* Although the nurse met with the plaintiff, she provided no medical care. *Id*. The plaintiff then collapsed and was moved to a new cell—his spit mask and original contaminated clothing were not removed. *Id.* Plaintiff was left in his cell "face down, arms restrained behind his back, and spit mask still on." *Id*. When the officers reentered the plaintiff's cell later that same day, he was dead. *Id.* at 233. A state medical examiner concluded that the plaintiff died of asphyxia caused by the pepper spray. *Id*. In denying summary judgment on plaintiff's deliberate indifference to a serious medical need claim, the Fourth Circuit noted it was "undisputed that Iko received *no* medical treatment whatsoever." *Id.* at 242. (emphasis in original). The court concluded that "the officers' actions—namely, shuttling Iko into a wheelchair upon his collapse without seeking any medical evaluation or even decontamination—were an insufficient

17

response to Iko's serious medical needs. Because those needs were objectively serious and the officers were subjectively aware of that seriousness and chose to do nothing, the officers' actions on these facts violated Iko's Eighth Amendment right to adequate medical care." *Id.* at 243.

As evidenced by the undersigned's above discussion of the evidence in the instant matter, *Williams* and *Iko* are inapposite to this case. Unlike the inmate plaintiffs in *Williams* and *Iko*, Plaintiff here received significant and immediate decontamination measures after being sprayed with chemical munitions. *Cf. Mann v. Failey*, 578 F. App'x 267, 273–74 (4th Cir. 2014) ("[T]here is ample evidence from which a fact finder could find that [Defendants] acted maliciously, sadistically, and in violation of the Eighth Amendment" as to plaintiff's failure to decontaminate claim because the officers not only did not permit Plaintiff to decontaminate, but no medical personnel checked on his condition, and the Defendants offered "no evidence that [Mann] was not in the [pain] he allege[d]"). Further, the record indicates that before Defendants Scott, Russell, and Rich returned Plaintiff to his cell, Plaintiff's "respirations were even and unlabored" and he "was in no acute distress." (Dkt. No. 79-8 at 1–2; 82-1 at 10.) In short, there is no genuine issue of material fact as to whether Defendants violated Plaintiff's rights under the Eighth Amendment by denying Plaintiff a shower after he was sprayed with chemical munitions.[5] Accordingly, the undersigned recommends summary judgment be granted to Defendants Scott, Russell, and Rich on Plaintiff's § 1983 claims and this action be dismissed in its entirety.

### D.     Strike Designation Under 28 U.S.C. § 1915(g)

Finally, Defendants ask that the Court designate this action as a "strike" pursuant to 28 U.S.C. § 1915(g). (Dkt. No. 79-1 at 14.) The Prison Litigation Reform Act ("PLRA") provides in relevant part that:

---

[5] In making this finding, the undersigned has expressly considered the decontamination procedures described by Plaintiff in his sur-reply. (Dkt. No. 84.)

18

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The Fourth Circuit Court of Appeals has instructed that an order of summary judgment may count as a strike for purposes of the PLRA's three-strikes provision, so long as the case is being dismissed for enumerated reasons of the three-strike provision, i.e. the case is "frivolous, malicious, or fails to state a claim." *Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir. 2013) (en banc), *as amended* (Oct. 22, 2013); *see also Miller v. Hooks*, 2015 WL 2452927, *2 n.4 (S.D. Ga. 2015) (citing *Blakely* and observing that "the Fourth Circuit's position in this regard is persuasive"). While the Court recommends summary judgment be granted here, dismissal is not recommended under one of the three enumerated reasons of the PLRA. Accordingly, this action should not be designated as a strike under 28 U.S.C. § 1915(g).

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Defendants' Motion for Summary Judgment (Dkt. No. 79) be GRANTED, and this action be dismissed with prejudice.

IT IS SO RECOMMENDED.

October 12, 2021

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).